# William Purkiss and others v. Henry Benson.

*Description: Boundaries: Evidence: Res gestæ: Conversation.* In an action of ejectment where the question involved is whether the premises in suit are included in the description in a certain deed, and the ambiguity does not appear on the face of the deed, but only by evidence, a conversation between the parties to the deed while the deed was being drawn, and in the presence of the scrivener, and in accordance with which an alteration was made in the description, is admissible in evidence as part of the *res gestæ*, tending to identify the boundaries in dispute.

*Evidence: Statements: Boundaries.* Evidence that the grantor in such deed, at the time the plaintiff purchased of the grantee therein, pointed out the line, was properly admitted, since they were statements made upon the land, by the owner of the land adjoining, in derogation of his own title to extend over the line pointed out.

*Construction of deed: Boundaries.* The construction put upon the description of the premises in the deed, by the court below, is held to be correct; it is the only one suggested that harmonizes the entire deed, and it satisfies the general intent, and the particular calls as near as may be under the circumstances.

*Public road: Street: Plat: Boundary.* The use of the expression "public road" as a boundary in the description in a deed, where the question involved is whether that boundary was intended to be a mere paper street, as laid down on a plat, or an actual highway, known as such, and not by any name appearing on the plat, is construed to indicate the latter rather than the former.

*Public road: Boundary: Charge to the jury.* The instruction to the jury, that whatever public road they found to have been referred to must govern as this boundary, was correct and in harmony with the deed.

*Boundary: Highway: Center of the road.* Where a boundary is expressly made by a public road, it indicates an intent to convey according to the rules governing boundaries on highways, and the construction put upon such a boundary by the court below, that it would carry the title to the center of the road, is not erroneous.

Heard January 8.  Decided January 27.

Error to Bay Circuit.

*McDonell & Cobb* and *H. H. Hatch,* for plaintiffs in error.

*Green & Scofield* and *Ashley Pond,* for defendant in error.

CAMPBELL, J.

Benson brought ejectment for certain lands in Bangor plat, which he claimed by title originally derived from Joseph Trombley (who made the plat) to one Frederick Lutzky, by deed dated December 6, 1858, but which had

been previously purchased and possessed under a contract before the plat was made. Trombley originally owned the government subdivision including the entire plat.

The deed to Lutzky contained a somewhat awkward description which was as follows: All those certain lots, pieces or parcels of land as hereinafter described, to wit.: "Village or town lots one (1), two (2), and three (3), in block fourteen (14), and the fractional piece of land lying north of said lots, bounded as follows: north and northerly by the fractional line; east by Sophia street; west by lot four (4), in said block fourteen (14); and said fraction is bounded west by land owned by the parties of the first part, being a continuous line as it runs between lots three (3) and four (4), north to said fractional line, and bounded south by the public road, being one hundred and fifty feet wide on said public road, and running north to said fractional line, to be one acre deep more or less, reference being had to the village or town plat of Bangor," etc.

The parcel in dispute is a parcel lying south of lots one, two and three, as they are marked upon the map, and is claimed to be (as the jury have found the fact to be) bounded southerly by the center of a public road existing at the date of the deed, and not marked on the plan of Bangor, which is one of the ordinary paper plans regularly laid out at right angles, and showing nothing otherwise. The north line of the fraction runs diagonally a little to the south of east, as appears by the lines called north and south on the plat, and approaches lots one, two and three, according to one survey, so as to leave a space of twenty-four hundredths of an acre, and according to another, eleven hundredths. The quantity of land in the whole premises including that in dispute, bounded by the center of the road and extending north to the northerly line of the fraction, was eighty-three hundredths, or seventy hundredths, according to the different surveys.

The location of this public road became an important question on the trial. Lutzky was allowed to testify that

when the scrivener was drawing the deed, "Trombley told me that lots one, two and three were right on the old road;" that Lutzky told Trombley he wanted no lots in the deed; that he wanted one acre; that Mr. Raymond, who was present and drew the deed, scratched a little out, and put one acre deep in, and that it was said that the one acre came down to the old road.

This testimony was objected to, but we cannot see upon what ground, and no ground was clearly given in the record or on the argument. Whatever ambiguity is in the deed does not appear on its face, but only by evidence. This proof is a part of the *res gestæ*, tending to identify the boundaries in dispute, and show where they were declared to be at the time. If there is any repugnance in the various items of description, it is of much weight in showing what parts are repugnant. It can make no difference whether the conversation took place on the land or elsewhere. It referred to a plan of record, and a road of public use, and was incapable of being made more specific by personal observation. The whole *res gestæ* furnish the best light on all ambiguities and doubts arising out of any act which is a part of them, as the drawing of this deed was.

Evidence of Trombley's pointing out the line when plaintiff bought of Lutzky in 1864, was also properly admitted.

These statements were made upon the ground, and by the owner of the land adjoining, and were in derogation of his own title to extend over the line pointed out. It does not appear, as claimed by plaintiffs in error, that at that time Trombley had ceased to possess or control the adjoining premises, and no such ground was set up in the objection.

The principal question in the case arises upon the construction given by the court below to the terms of the deed. The court below charged in substance that the premises called for in the deed were bounded north by the fractional line, east by Sophia street, west by the line, and

the extension of the line, between lots three and four, and south by the public road; being one hundred and fifty feet wide on said public road, running north to said fractional line, to be one acre deep more or less; and that the boundary by the road would carry the title to the center.

This is claimed to be erroneous. We think the charge was correct. It is the only construction which can harmonize the entire deed. And the only suggestion which is made against it seems to us unreasonable. The plaintiffs in error claim that the land intended is the whole of lots one, two and three, and the fraction lying north of these, between them and the north line of the fraction, on the other side of a street claimed to lie there. This construction involves several difficulties. In the first place it is impossible to satisfy more than a very small part of the quantity and distances called for. In the next place there is not only nothing to indicate the dimensions or existence of Fourth street as an actual or legal street as required by law, but the use of the words Sophia street when that street is referred to, and the words "public road" when the boundary at the south is described, indicates that the latter was a different thing from a paper street, and was an actual highway known as such, and not by any name appearing on the plat.

The construction put upon the deed by the circuit court satisfies the general intent, and the particular calls as near as may be, provided there was actually a public road south of the lots; and upon this the jury have found for Benson. The length and width of the whole parcel treated as one lot correspond very nearly with the dimensions called for, and there is in the other particulars a complete conformity. The only line not conforming in terms to the plat is the southerly line. If the south line of the three lots named is adhered to, it bounds on neither road nor street, thus raising a new repugnance, and there is not land enough to come near the requisite amount. This ambiguity was removed by the evidence, which the jury must have cred-

ited, that Lutzky had occupied an acre before the platting, and that when the deed was drawn up it was changed to prevent any difficulty as to boundary which the description by lots might create. As they were fully cautioned that whatever public road they found to have been referred to must govern, there was nothing in the instructions which was not, in our opinion, in absolute harmony with the deed.

As the boundary was made expressly by the public road, it indicates an intent to convey according to the rules governing boundaries on highways, and the court was therefore right in so holding, and in extending the owner-ship to the center.

The judgment must be affirmed, with costs.

COOLEY J., and GRAVES, CH. J., concurred.

CHRISTIANCY, J., did not sit in this case.